UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
ROSA MUNOZ,

     *Plaintiff*,

  v.

COMMISSIONER OF SOCIAL SECURITY,

     *Defendant*.
--------------------------------X

<u>**MEMORANDUM AND ORDER**</u>

20-cv-2496 (KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

     Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Rosa Munoz ("plaintiff") appeals the final decision of the Commissioner of Social Security ("defendant"), which found plaintiff not disabled and thus not eligible for disability insurance benefits ("DIB") under sections 216(i) and 223(d) of the Social Security Act ("the Act"). Plaintiff alleges that she is disabled under the Act and is therefore entitled to receive the benefits.

     Presently before the court is plaintiff's motion for judgment on the pleadings, (ECF No. 21-1, Plaintiff's Memorandum of Law in Support of His Motion for Judgment on the Pleadings ("Pl. Mem.")), defendant's cross-motion for judgment on the pleadings and in opposition to plaintiff's motion for judgment on the pleadings, (ECF No. 22-1, Memorandum of Law in Support of Defendant's Cross-Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion for Judgment on the Pleadings

1

("Def. Mem.")), and plaintiff's reply memorandum of law in support of plaintiff's motion for judgment on the pleadings, (ECF No. 23, Plaintiff's Reply Memorandum of Law ("Pl. Reply")). For the reasons stated below, plaintiff's motion is GRANTED, defendant's motion is DENIED, and the case is REMANDED.

<u>**BACKGROUND**</u>

The parties have submitted a joint stipulation of facts detailing plaintiff's medical history and the administrative hearing testimony, which the court incorporates by reference. (*See generally* ECF No. 22-2, Joint Stipulation of Facts ("Stip.").)

Plaintiff filed an application for DIB on November 2, 2016, alleging disability beginning on May 13, 2016. (ECF No. 20, Administrative Transcript ("Tr.") at 15.) Plaintiff claimed she was disabled as a result of her arthritis, osteoporosis, herniated disc, depression, asthma, and acid reflux. (*Id.* at 79-80.) Her application was denied on January 21, 2017. (*Id.* at 15.)

On March 15, 2017, plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) On November 29, 2018, ALJ Bonnie Hannan held a video hearing from Falls Church, Virginia, during which plaintiff appeared in Manhattan and was represented by an attorney. (*Id.* at 45-47.) Plaintiff and a vocational expert ("VE") testified at the

2

hearing.  (*Id.*)  The VE testified that, assuming plaintiff was limited to "light work" as it is defined, she could perform her former job as a home health aide and other jobs that are generally performed in the national economy, such as being a store cashier or a sales attendant.  (*Id.* at 71–73.)  When considering the impact the additional limitation of, "frequent bilateral handle, finger, and feel" would have, the VE testified that plaintiff could still perform those same jobs.  (*Id.* at 73–74.)  When adding the mental health limitations, the VE testified that plaintiff could not return to her past work, but could perform other unskilled work.  (*Id.* at 74–75.)

In a decision dated March 12, 2019, the ALJ found that plaintiff was not disabled.  (*Id.* at 9.)  On May 6, 2019, plaintiff appealed the ALJ's decision to the Appeals Council. (*Id.* at 191–193.)  On April 30, 2020, the Appeals Council denied review of the ALJ's decision, thus making the ALJ's decision the final decision of the Commissioner.  (*Id.* at 1–8.)

On June 4, 2020, plaintiff filed the instant action. (*See generally* ECF No. 1, Complaint ("Compl.").)  On June 6, 2020, this court issued a scheduling order.  (ECF No. 7, Scheduling Order.)

Defendant filed two motions for extensions of time to file the Administrative Transcript.  (ECF Nos. 10, 12.)  The

court granted both motions for extensions.  (Dkt. Orders dated 9/8/2020, 10/28/2020.)

On April 9, 2021, plaintiff filed a motion for an extension of time to file her motion for judgment on the pleadings, which the court granted.  (ECF No. 15; Dkt. Order dated 4/12/2021.)  On June 16, 2021, defendant also filed a motion for an extension of time to file his cross-motion for judgment on the pleadings.  (ECF No. 18.)  The defendant's motion was granted in part and denied in part.  (Dkt. Order dated 6/16/2021.)

On August 13, 2021, the Administrative Transcript was entered into the record.  (ECF No. 20.)  The same day, plaintiff filed her notice of motion and memorandum of law in support of plaintiff's motion for judgment on the pleadings, and defendant filed his cross-motion and memorandum of law in support of defendant's cross-motion for judgment on the pleadings and in opposition to plaintiff's motion for judgment on the pleadings. (ECF Nos. 21, 22.)  Later that same day, plaintiff filed her reply memorandum of law.  (ECF No. 23.)

## LEGAL STANDARD

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such

4

decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. §§ 405(g), 1383(c)(3). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

A district court may set aside the Commissioner's decision only if the factual findings are not supported by substantial evidence or if the decision is based on legal error. *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence is more than a mere scintilla," and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)) (internal quotation marks omitted). If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g). Inquiry into legal error "requires the court to ask whether 'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). The reviewing court does not have the authority to conduct a *de novo* review, and may

not substitute its own judgment for that of the ALJ, even when it might justifiably have reached a different result.  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

To receive disability benefits, claimants must be "disabled" within the meaning of the Act.  *See* 42 U.S.C. §§ 423(a), (d).  A claimant is disabled under the Act when she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000).  The impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any other kind of substantial gainful work.  42 U.S.C. § 423(d)(2)(A).  "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'"  *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used

to determine whether the claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520.  This process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 404.152(a)(4).

During this five-step process, the Commissioner must consider whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits."  20 C.F.R. § 404.1523.  Further, if the Commissioner does find a combination of impairments, the combined impact of the impairments, including those that are not severe (as defined by the regulations), will be considered in the determination process.  20 C.F.R. § 416.945(a)(2).  At steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability." *Burgess*, 537 F.3d at 128.  At step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's RFC, age, education, and work experience, the claimant is "able to engage

in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

Lastly, federal regulations explicitly authorize a court, when reviewing decisions of the SSA, to order further proceedings when appropriate. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)) (internal quotation marks omitted). Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts*, 94 F.3d at 39. However, if the record before the court provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," the court may reverse and remand solely for the calculation and payment of benefits. *See, e.g.*, *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

## DISCUSSION

## I. The ALJ's Disability Determination

Using the five-step sequential process to determine whether a claimant is disabled as mandated by the regulations, the ALJ determined at step one that the plaintiff had not engaged in substantial gainful activity since May 13, 2016, the alleged onset date of her disabilities.  (Tr. at 18.)

At step two, the ALJ found that plaintiff suffered from severe impairments of lumbosacral radiculopathy, cervical spondylosis without myelopathy or radiculopathy, osteoarthritis of bilateral knees, osteopenia of the left hip, osteoarthritis of bilateral hands and wrists, rotator cuff impingement, and obesity.  (*Id.*)  The ALJ found that plaintiff's medically determinable impairments significantly limited her ability to perform basic work activities.  (*Id.*)

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled Medical Listing 1.02 (major dysfunction of a joint(s)) or Medical Listing 1.04 (disorders of the spine). (*Id.* at 19–20; 20 C.F.R. §§ 404.1520(d), 404.1525, or 404.1526.) The ALJ found that the criteria set forth in paragraphs A and B of Medical Listing 1.02, and paragraphs A, B, and C of Medical Listing 1.04 were not satisfied based on the evidence in the record.  (*Id.* at 19–20.)  Additionally, the ALJ found that

9

plaintiff's obesity did not rise to a level of severity found in any listing. (*Id.* at 20.)

At step four, the ALJ found that plaintiff had the Residual Functional Capacity ("RFC") to perform light work but with the following manipulative limitations: (1) the inability to reach overhead to the left and the ability to reach overhead to the right only occasionally; (2) the ability frequently (as opposed to constantly) handle, finger, and feel bilaterally; (3) the ability to climb ramps and stairs but not ladders, ropes, or scaffolds; (4) the ability to balance, stoop, kneel, crouch, and crawl only occasionally; (5) the inability to work at unprotected heights, and ability to have only occasional exposure to humidity, wetness, dust, odors, fumes, and pulmonary irritants; (6) the ability to work in vibration only occasionally; (7) the need to avoid all exposure to extreme cold or heat; and (8) the ability to work jobs that can be demonstrated visually and do not require reading in English. (*Id.*)

The ALJ concluded that although plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.* at 21.)  The ALJ compared

plaintiff's testimony to plaintiff's medical records and determined that plaintiff was not restricted in moving her neck, but had a decreased range of motion in her shoulder. (*Id.*)  The ALJ also considered the effect of plaintiff's obesity on her musculoskeletal impairments and reached the same conclusions about her range of motion. (*Id.* at 23.)

At step five, the ALJ found, based on plaintiff's age, education, work experience, and residual functional capacity, that she can perform past relevant work as a home health aide, or alternatively, that there are jobs that exist in significant numbers in the national economy that she can perform (20 C.F.R. §§ 404.1569 and 404.1569(a)). (*Id.* at 23–25.)  The vocational expert testified that plaintiff could perform her past job as a home health aide as actually performed.[1]  (*Id.* at 23–24.)  The vocational expert testified further that plaintiff would be able to perform the requirements of representative light exertional occupations such as merchandise marker, store cashier, and sales attendant. (*Id.* at 25.)  Thus, the ALJ concluded that plaintiff was not disabled within the meaning of the Act, as defined in 20 C.F.R. § 404.1520(f), since May 13, 2016, through the date of the decision. (*Id.*)

---

[1] The home health aide job (DOT 354.377-014) is considered a "medium, semiskilled" position.  The vocational expert testified that in the past, plaintiff performed this job at the less demanding "light exertional level," but she currently has the ability to perform this job as actually performed, that is, as a medium, semiskilled position.

**II. The ALJ's Determination Is Not Supported by Substantial Evidence.**
    **A. Plaintiff's Treating Physician's Opinion.**

Plaintiff argues that the ALJ failed to properly evaluate medical evidence with respect to her bilateral hand disorder by according little weight to the opinion of her treating rheumatologist, Dr. Victoria Katz. (Pl. Mem. at 3–7.) Specifically, plaintiff asserts that the ALJ erred by concluding that she could "frequently handle, finger, and feel" despite evidence from Dr. Katz of significant arthritis, Dupuytren's contractures, and thenar muscle atrophy in her bilateral hands. (*Id.* at 5.) Further, plaintiff argues that the ALJ erred by finding that her ability to "shop in stores, prepare meals, dress, and bathe" demonstrates that she can frequently handle, finger, and feel. (*Id.* at 6.)

In response, the Commissioner argues that the ALJ properly accounted for plaintiff's hand impairments by limiting her RFC to "frequent, as opposed to constant, handling, fingering, and feeling with both hands." (Def. Mem. at 4.) Additionally, the Commissioner asserts that the ALJ was correct to accord little weight to Dr. Katz's opinions about plaintiff's strength and range of motion, because those opinions were inconsistent with her own and other examination findings, and inconsistent with plaintiff's reported ability to engage in daily activities. (*Id.* at 5–6.)

12

In general, "an ALJ should defer 'to the views of the physician who has engaged in the primary treatment of the claimant.'" *Cichocki v. Astrue*, 534 F.App'x 71, 74 (2d Cir. 2013) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)).[2] "However, '[a] treating physician's statement that the claimant is disabled cannot itself be determinative.'" *Id.* (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)). Rather, pursuant to 20 C.F.R. § 404.1527(c)(2), "'a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)' will be given 'controlling weight' if the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Id.*

"An 'ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion,' including: '(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion;

---

[2] The Commissioner has revised its rules to eliminate the treating physician rule, and ALJs are now to weigh all medical evaluations, regardless of their sources, based on how well supported they are and their consistency with the remainder of the record. *See* 20 C.F.R. §§ 404.1520b; 416.920c. Claims filed before March 27, 2017, however, are still subject to the treating physician rule, *see id.* § 404.1527(c)(2), and the Court accordingly applies the rule to this case, as plaintiff filed her claim on November 2, 2016. *See, e.g., Conetta v. Berryhill*, 365 F. Supp. 3d 383, 395 n.5 (S.D.N.Y. 2019).

(iii) the consistency of the opinion with the record as a
whole; (iv) whether the opinion is from a specialist; and (v)
other factors brought to the Social Security Administration's
attention that tend to support or contradict the opinion.'"
*Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.
2004)).  "The ALJ must then 'comprehensively set forth his
reasons for the weight assigned to a treating physician's
opinion.'"  *Id.* (quoting *Burgess*, 537 F.3d at 129).  The
regulations also require that the ALJ "always give good
reasons" in determining the weight assigned to the treating
source's opinion.  *See* 20 C.F.R. § 416.927(c)(2); *see also*
*Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998).  The ALJ is
not required to cite each factor explicitly in his/her
decision, but must ensure he/she applies the substance of the
rule.  *Halloran*, 362 F.3d at 32.

The ALJ chose to give "little weight" to the opinion
of plaintiff's treating physician, Dr. Katz.  (Tr. at 22.)  The
ALJ determined that Dr. Katz's opinion that plaintiff "could
not lift or carry anything" and that she is "limited in pushing
and pulling with the upper extremities" was "generally
inconsistent with examination findings that indicated the
claimant was able to squat full and had normal range of motion
in the hips, knees and ankles, and had 4/5 and 5/5 and normal
sensation."  (*Id.* at 22–23.)  Thus, the ALJ attempted to refute

14

Dr. Katz's opinions regarding plaintiff's upper extremity limitations by citing to lower extremity findings. (*Id.*)  The ALJ also found that Dr. Katz's opinion was inconsistent with plaintiff's reported ability to shop in stores, prepare meals, dress, and bathe, because those activities "suggest[] that she can at least frequently handle, finger, and feel." (*Id.* at 23.)

The ALJ failed to consider the *Burgess* factors, such as the length, frequency, nature or extent of Dr. Katz's relationship with the plaintiff, or provide a persuasive rationale supporting the weight given. *See Burgess v. Astrue,* 537 F.3d 117, 128 (2d Cir. 2008); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 268 (E.D.N.Y. 2010) (citing *Risitano v. Comm'r of Soc. Sec.*, No. 06-CV-2206(FB), 2007 WL 2319793, at *5 (E.D.N.Y. Aug. 9, 2007) (remanding the case and directing the ALJ to "identify the evidence [the ALJ] did decide to rely on and thoroughly explain ... the reasons for his decision" if the ALJ did not intend to rely on the opinions of plaintiff's treating physicians); *Torregrosa v. Barnhart*, No. CV-03-5275(FB), 2004 WL 1905371, at *6 (E.D.N.Y. Aug. 27, 2004) (remanding because "(1) there is a reasonable basis to doubt whether the ALJ applied the correct legal standard in weighing the opinions of [the treating physicians], and (2) the ALJ failed to give good

15

reasons for the weight, or lack thereof, given to those opinions").)

The ALJ also erred by mischaracterizing the evidence in arriving at the conclusion that Dr. Katz's opinion was inconsistent with substantial evidence in the record. Specifically, the ALJ found that Dr. Katz's opinion was inconsistent with plaintiff's reported ability to shop in stores, prepare meals, dress, and bathe, because those activities "suggest[] that she can at least frequently handle, finger, and feel." (*Id.* at 23.) "[A] finding that a claimant is capable of undertaking basic activities of daily life cannot stand in for a determination of whether that person is capable of maintaining employment, at least where there is no evidence that the claimant 'engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job.'" *Bigler v. Comm'r of Soc. Sec.*, No. 19-CV-03568 (AMD), 2020 WL 5819901, at *5 (E.D.N.Y. Sept. 29, 2020) (quoting *Vasquez v. Barnhart*, No. 02-CV-6751, 2004 WL 725322, at *11 (E.D.N.Y. Mar. 2, 2004*)); see also Murdaugh v. Sec'y of Dep't of Health & Human Servs.*, 837 F.2d 99, 102 (2d Cir. 1988) ("[T]hat appellant receives conservative treatment, waters his landlady's garden, occasionally visits friends and is able to get on and off an examination table is scarcely said to

16

controvert the medical evidence."); *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983).

Accordingly, because the ALJ failed to provide good reasons and properly analyze the *Burgess* factors, and mischaracterized the evidence, the case is remanded. On remand, the ALJ is directed to accord appropriate weight to Dr. Katz's opinion and explain in detail the factors required by the Second Circuit in *Halloran* or *Burgess* as discussed *supra*.

**B. Plaintiff's Ability to Perform Relevant Work.**

Plaintiff also argues that the ALJ erred by finding that she can return to past relevant work or perform other work available in the national economy. (Pl. Mem. at 1–2.) Specifically, she asserts that the ALJ erred by relying on vocational expert testimony that conflicted with the Dictionary of Occupational Titles ("DOT") and its companion publication, the Selected Characteristics of Occupations ("SCO"), without asking the VE to provide an explanation for the deviation. (*Id.* at 9–10.) Social Security Ruling (SSR) 00-4p states: before relying on VE or VS evidence to support a disability determination or decision, our adjudicators must:

- Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the

17

Selected Characteristics of Occupations Defined in the
Revised Dictionary of Occupational Titles (SCO), published
by the Department of Labor, and

- Explain in the determination or decision how any conflict
that has been identified was resolved.

"The DOT gives a job type a specific code—for example, '295.467-026 Automobile Rental Clerk'—and establishes, among other things, the minimum skill level and physical exertion capacity required to perform that job.  The DOT is so valued that a VE whose evidence conflicts with the DOT must provide a 'reasonable explanation' to the ALJ for the conflict."  *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 446 (2d Cir. 2012).

Here, the ALJ asked the VE a hypothetical as to whether plaintiff could return to her past work as a home health aide as she is incapable of "overhead reaching to the left." (Tr. at 72.)  The VE testified that Plaintiff could perform past work, even though it requires overhead reaching, and could perform work as a merchandise marker, store cashier, and sales attendant, which all require overhead reaching.  (*Id*. at 73.) When asked if the VE's testimony was consistent with the DOT, the VE responded that besides the "overhead reaching" component, the testimony is consistent with the DOT and SCO.

The Commissioner does not contest plaintiff's assertion that the ALJ erred by finding she can return to past

relevant work as a home health aide.  (Def. Mem. at 8.)  Rather,
the Commissioner argues that even assuming plaintiff cannot
return to her previous job as a home health aide, the ALJ would
still conclude that Plaintiff is not disabled because of the
ALJ's alternative finding that she can perform other work
available in significant numbers in the national economy,
including the jobs of merchandise marker, store cashier, and
sales attendant.  (*Id.* at 8-9.)

ALJs must inquire into all apparent conflicts between
a vocational expert's testimony and the DOT and SCO descriptions
of jobs.  *Lockwood v. Commissioner of Social Security*, 914 F.3d
87, 92 (2d Cir. 2019).  Here, the VE testified that Plaintiff
could perform work as a merchandise marker, store cashier, and
sales attendant, even though they require overhead reaching.
(*See* Pl. Mem., Exhibit A, SCO Descriptions.)  When the ALJ
denies DIB based on evidence that conflicts with the DOT or SCO
without taking any steps to resolve the conflict, then remand is
warranted.  *Id.* at 94 (reversing the district court's finding
that the ALJ's denial of DIB was supported by substantial
evidence because the vocational expert's testimony conflicted
with the DOT and SCO, and the ALJ never identified the
conflict).

In *Lockwood*, a vocational expert testified that the
DIB claimant was limited to no overhead reaching, but could

still perform jobs that the DOT and SCO characterize as requiring "frequent" reaching. *Id.* at 92. The Second Circuit found this to be an apparent conflict that required resolution by the Commissioner before the testimony could properly be relied on. *Id.* Importantly, the Second Circuit rejected the district court's reasoning that the conflict was resolved because the vocational expert informed the ALJ that her opinion was based on her own experiences observing the jobs she had identified. *Id.* at 90.

Here, the vocational expert testified as to three different jobs available in the national economy that plaintiff could perform, but never informed the ALJ that all three jobs required overhead reaching. In fact, when the ALJ asked whether there were any conflicts, the vocational expert replied, "Not that I am aware of." (Tr. at 75.) This failure to identify an apparent conflict warrants a remand. *Lockwood*, 914 F.3d at 94. As the Second Circuit has explained, contrary to the Commissioner's argument, the fact that the vocational expert's opinion was based on her own "knowledge and experience" does not resolve the conflict. *Id.* at 90. *Lockwood* requires that the ALJ first acknowledge the conflict between the SCO descriptions and the VE's proposed job for Plaintiff. *Id.* Because the ALJ in this case failed to do so, she inappropriately relied on the vocational expert's testimony concerning plaintiff's ability to

20

work in the national economy.  Thus, remand is warranted on this
basis.

### C. Consideration of Plaintiff's Age and English Literacy

Next, plaintiff argues that the ALJ failed to properly
consider her age and illiteracy under the Medical-Vocational
Guidelines.  (Pl. Mem. at 12.)  The Medical-Vocational
Guidelines direct a finding of not disabled for individuals
capable of light work who are closely approaching advanced age
(fifty to fifty-four) if they have a limited education and basic
English literacy.  *See* 20 C.F.R., Part 404, Subpart P, App'x 2 §
202.00(d).  If a claimant is "within a few days to a few months
of reaching an older age category," the Social Security
Administration "will consider whether to use the older age
category after evaluating the overall impact of all the factors"
of the case.  20 C.F.R. § 404.1563(b).  "Courts within the
Second Circuit have concluded," however, "that three months
constitutes the outer limits of a 'few months' for the purposes
of borderline age."  *Amato v. Berryhill*, No. 16-CIV-6768, 2017
WL 11455346, at *22 (S.D.N.Y. Dec. 1, 2017), *R&R adopted*, 2019
WL 4175049 (S.D.N.Y. Sept. 3, 2019); *Pennock v. Comm'r of Soc.
Sec.*, 14-CV-1524, 2016 WL 1128126 at *11 (N.D.N.Y. Feb., 23,
2016) ("[A]mong the district courts in the Second Circuit, three
months appears to delineate the outer limits of 'a few
months.'"); *see also Gravel v. Barnhart*, 360 F.Supp.2d 442, 446

n. 8 (N.D.N.Y. 2005) (eleven months not borderline); *Hunt v. Comm'r of Social Security*, No. 00-CV-706, 2004 WL 1557333, at *5 n.14 (N.D.N.Y. 2004) (eight months not borderline).

A claimant will be classified as illiterate if he is unable to "read or write a simple message such as instructions or inventory lists." *Jimenez v. Berryhill*, No. 16-CV-3972, 2018 WL 4054876, at *4 (E.D.N.Y. Aug. 24, 2018); 20 C.F.R. § 404.1564(b)(1). Under this low standard, "the question is only whether the plaintiff is so deficient in his ability to read and write that he cannot obtain even an unskilled job." *Jimenez*, 2018 WL 4054876, at *4 (quoting *Gross v. McMahon*, 473 F.Supp.2d 384, 389 (W.D.N.Y. 2007)).

Plaintiff contends that she turned fifty in May 2019, "just eleven weeks after the ALJ's March 12, 2019 decision," and thus, meets the borderline age to be considered disabled under the Medical-Vocational Guidelines. (Pl. Mem. at 13.) Plaintiff also asserts that because the ALJ acknowledged her inability to read English, the ALJ necessarily concluded she is illiterate, and because she is illiterate, the combination of her borderline age and illiteracy would have deemed her disabled under the Medical-Vocational guidelines. (*Id.* at 12-13.)

In response, the Commissioner argues that the ALJ was not required to consider plaintiff's borderline age because she is not illiterate, and thus the outcome would be the same

regardless of a change in age category.  (Def. Mem. at 13.)
Here, the record establishes that plaintiff is not illiterate.
At the hearing, plaintiff could follow both written and spoken
directions in English.  (Joint Stip. At 10.)  She testified that
she "could understand a little bit of written English" and
appeared at the hearing without an interpreter.  (*Id.*)  Similar
to *Jimenez*, where plaintiff was not deemed illiterate because he
was "able to read and write some English," plaintiff here has
not established illiteracy based on an inability to communicate
in English.  *Jimenez*, 2018 WL 4054876, at *6.  Thus, because
plaintiff is not illiterate, the ALJ did not err by not
considering the fact that she turned fifty eleven weeks after
the ALJ's decision.

## CONCLUSION

The Commissioner's finding that plaintiff was not disabled as defined by the SSA is not supported by substantial evidence in the record because the ALJ did not properly apply the treating physician's rule and improperly relied on the vocational expert's testimony that conflicted with the DOT and SCO. Accordingly, plaintiff's motion for judgment on the pleadings is GRANTED, defendant's cross-motion for judgment on the pleadings is DENIED, and the case is REMANDED for further proceedings consistent with this Memorandum and Order.  The Clerk of Court is respectfully directed to enter judgment in favor of plaintiff.

**SO ORDERED.**

DATED: September 20, 2021
        Brooklyn, New York

_____/s/_____
**HON. KIYO A. MATSUMOTO**
United States District Judge

24